Larry W. Lee (State Bar No. 228175)
lwlee@diversitylaw.com
DIVERSITY LAW GROUP, P.C.
550 S. Hope Street, Suite 2655
Los Angeles, California 90071
(213) 488-6555
(213) 488-6554 facsimile

Dennis S. Hyun (State Bar No. 224240)
HYUN LEGAL, APC
550 South Hope Street, Suite 2655
Los Angeles, California 90071
(213) 488-6555
(213) 488-6554 facsimile

Zack Broslavsky (State Bar No. 241736)
Jonathan A. Weinman (State Bar No. 256553)
BROSLAVSKY & WEINMAN, LLP
11755 Wilshire Blvd., Suite 1250
Los Angeles, CA 90025
(310) 575-2550
(310) 464-3550 facsimile

Attorneys for Plaintiff and the Class

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLER ANDERSON,<br><br>             Plaintiff,<br><br>vs.<br><br>BRINK'S, INCORPORATED, a Delaware Corporation; and DOES 1 through 50, inclusive,<br><br>             Defendants. | Case No.<br><br>**PLAINTIFF'S CLASS ACTION AND INDIVIDUAL COMPLAINT FOR DAMAGES AND PENALTIES FOR:**<br><br>**(1) VIOLATION OF §15 U.S.C. 1681b(b)(2)(A) (FAIR CREDIT REPORTING ACT);**<br><br>**(2) RETALIATION IN VIOLATION OF LAB. CODE § 6310;**<br><br>**(3) WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY;**<br><br>**(4) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

-1-
PLAINTIFF'S CLASS ACTION AND INDIVIDUAL COMPLAINT FOR DAMAGES

**(DEMAND OVER $25,000)**

## COMPLAINT

Comes now Plaintiff Tyler Anderson ("Plaintiff"), an individual, by and through his attorneys of record, hereby alleges and complains against Defendants Brink's, Incorporated, a Delaware Corporation, (the "Company" or "Defendant") and Does 1 through 50 (collectively, "Defendants") as follows:

## JURISDICTION AND VENUE

1. Venue is proper in this Court because Plaintiff was employed by Defendants in this District and Defendants do business in this District. Further, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and the Class Action Fairness Act (the "CAFA") 28 U.S.C. § 1332(d)(2), in that Plaintiff is informed and believes and based thereon alleges that this class action's amount in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which Plaintiff and members of the class are citizens from a state that is different than the states in which Defendant is a citizen. Specifically, Plaintiff and members of the class are California citizens, while Defendant is a citizen of Delaware and/or Texas, where Defendant maintains its headquarters.

## PARTIES

2. On or about January 27, 2014, Plaintiff was hired by Defendant as a "Cash Logistics Processor," based in Sacramento, California. Plaintiff's responsibilities included driving Defendant's vehicles. On or about August 28, 2015, Plaintiff was unlawfully terminated by Defendant.

3. Defendant is engaged in the security and transportation business with locations throughout the State of California, including in the County of Sacramento.

## DOE DEFENDANTS

4. Plaintiff does not know the true names or capacities, whether individual, partner or corporate, of the Defendants sued herein as Does 1 through 50, inclusive, and for that reason, said Defendants are sued under such fictitious names, and Plaintiff prays for leave to amend this complaint when the true names and capacities are known. Plaintiff is informed and believes and, based thereon alleges, that each of said fictitious Defendants was responsible in some way for the matters alleged

1  herein and proximately caused Plaintiff to be subject to the illegal employment practices, wrongs and
2  injuries complained of herein.

### AGENCY STATUS OF EACH DEFENDANT

5. At all times herein mentioned, each of said Defendants participated in the doing of the acts hereinafter alleged to have been done by the named Defendants; and furthermore, the Defendants, and each of them, were the agents, servants and employees of each of the other Defendants, as well as the agents of all Defendants, and at all times herein mentioned, were acting within the course and scope of said agency and employment.

6. Plaintiff is informed and believes and, based thereon alleges, that at all times material hereto, each of the Defendants named herein was the agent, employee, alter ego and/or joint venturer of, or working in concert with each of the other co-Defendants and was acting within the course and scope of such agency, employment, joint venture, or concerted activity.  To the extent said acts, conduct, and omissions were perpetrated by certain Defendants, each of the remaining Defendants confirmed and ratified said acts, conduct, and omissions of the acting Defendants.

7. At all times herein mentioned, Defendants, and each of them, were members of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

8. At all times herein mentioned, the acts and omissions of various Defendants, and each of them, concurred and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged.  At all times herein mentioned, Defendants, and each of them, ratified each and every act or omission complained of herein.  At all times herein mentioned, the Defendants, and each of them, aided and abetted the acts and omissions of each and all of the other Defendants in proximately causing the damages as herein alleged.

### CLASS ALLEGATIONS

9. The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 strictly regulates the procurement and use of consumer reports.  FCRA defines "consumer report" as

any oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for employment purposes.

15 U.S.C. § 1681.

10. Under the FCRA, it is illegal to "procure, or cause a consumer report to be procured, for employment purposes with respect to any consumer" unless "*a clear and conspicuous disclosure has been made in writing* to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis added).

11. Defendant has willfully violated 15 U.S.C. §1681b(b)(2)(A)(i) by procuring consumer reports on Plaintiff and other Class members for employment purposes, without first providing proper disclosures that comply with FCRA requirements.

12. On or about January 7, 2014, Plaintiff applied for a job with the Defendant. As part of the application process, Plaintiff executed an employment application. (See Exhibit 1.)

13. The employment application contained a section titled "Background Investigation and Reference Authorizations." This section provides, in part:

> Part of the employment process is an investigation and verification of information I provided or will provide on my application for employment and in occasional reports during my employment with Brink's and verifications of my eligibility for employment. These investigations are conducted by the company and/or its authorized agent.
>
> Included in this authorization is any investigation of my personal and employment history for purposes of references and employment eligibility and I further release the companies, schools, prior employers or agents of Brink's who secure this information or provide the information from any and all liability or damages for providing and releasing information. I hereby state that the information and any application/resume for Brink's or its agent is true and complete. In the event of employment opportunity with Brink's, I understand that false, misleading or omitted information given in any application documents, or employment interviews may result in termination of employment.

14. The employment application also contained a section titled "Applicant's Statement." The fourth paragraph of the Applicant's Statement section reads:

I understand that an investigation of all matters concerning my past employment, credit, character or other activities will be conducted, and that my employment or continued employment will be subject to acceptable results of such investigation. I release from any and all liability and responsibility all persons, companies, and corporations supplying such information and Brink's agents and employees in obtaining the same.

15. The other paragraphs in the "Application Statement" section contain various other statements and acknowledgements, including:

- I understand that employment with Brink's is employment-at-will and may be terminated by either the employee or Brink's at any time without notice or for any reason. No commitment or other term of employment shall be inferred or otherwise assumed from any source whatsoever, written or oral, except as herein provided . . .

- I understand that hiring is subject to verification of all information contained in this application or other pre-employment questionnaires or interviews, including, but not limited to, verification of ability to perform the essential functions of the position with or without accommodation and of applicable age and legal right to remain in and to work in the United States as provided under applicable.

- I understand that an offer of employment may be subject to completion of a satisfactory physical examination. I consent to taking such a physical examination and future physical examinations as maybe required by Brink's.

- I understand that I am required to abide by all the rules and regulations of Brink's including all applicable safety rules and I agree to use such protective clothing and devices as may be required by Brink's.

- I understand and agree that any false, misleading or incomplete information given in my application, interview(s) or other pre-employment questionnaires and procedures, regardless of when discovered by Brink's, will be sufficient basis for my disqualification for employment or, if employed, the termination of my employment with Brink's.

16. Neither the "Background Investigation and Reference Authorization" section, nor the "Application Statement" section, whether individually or collectively, comply with the FCRA requirements. Neither section is a document consisting solely of clear and conspicuous disclosure that a consumer report may be obtained for employment purposes. Instead, both sections are part of the employment application, and the disclosures are surrounded by other extraneous information and statements cited above.

17. Additionally, both sections contain a purported release of liability and responsibility for all claims pertaining to procurement of consumer reports.

18. On or about January 9, 2015, Plaintiff had an in-person interview with Defendant.

19. Despite not providing Plaintiff with the stand-alone document consisting solely of the

disclosure required by FCRA, on or about January 17, 2015, Defendant requested its outside vendor, HireRight, Inc. ("HireRight"), to procure a consumer report on Plaintiff.

20.   Plaintiff is informed and believes that Defendant procures consumer reports as part of their standard employment screening process.  Defendant relies on outside consumer reporting agencies, such as HireRight, to obtain this information and report it to them.

21.   Based upon the facts likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, Defendant has a policy and practice of failing to provide affected individuals with a clear and conspicuous written disclosure, in a document consisting solely of the disclosure, that a consumer report may be obtained for employment purposes.

22.   Defendant's practices are contrary to the unambiguous language of FCRA, and are counter to longstanding judicial and regulatory guidance.  (*See e.g.* FTC Advisory Opinion to Leathers (09-09-98) ["The disclosure may not be part of an employment application . . . The reason for requiring that the disclosure be in a stand-alone document is to prevent consumers from being distracted by other information side-by-side within the disclosure."]; FTC Staff Report dated December 2011 ["the notice [under 15 U.S.C § 1681b(b)(2)(A)] may not include extraneous or contradictory information, such as a request for a consumer's waiver of his or her rights under the FCRA."]; *Singleton v.Domino's Pizza, LLC, 2012 WL* 245965, at * 7-9 (D. Md. Jan 25, 2012) ("[I]nclusion of the liability release in the [] form precludes Domino's from asserting that … the [] form satisfies the FCRA's requirements."])

23.   **Class Definition:**   The named individual Plaintiff seeks class certification, pursuant to FRCP 23.  Plaintiff proposes the following Class:

> All individuals on whom Defendant procured consumer reports for employment purposes in the period beginning two years prior to the filing of this Complaint.

24.   **Numerosity and Ascertainability:**   The members of the Class are so numerous that joinder of all members would be impractical, if not impossible.  The identity of the members of the Class is readily ascertainable by review of Defendant's records, including personnel records and consumer reports procured by Defendant.

25.   **Adequacy of Representation:**   The named Plaintiff is fully prepared to take all

necessary steps to represent fairly and adequately the interests of the class defined above. Plaintiff's attorneys are ready, willing and able to fully and adequately represent the class and the individual Plaintiff. Plaintiff's attorneys have prosecuted and settled class actions in the past and currently have a number of class actions pending in California state and federal courts.

26. **Typicality**: Plaintiff's claims are typical of the members of the Class. Plaintiff is informed and believes that Defendant has a uniform policy regarding procurement of consumer reports and typically does not provide the stand-alone disclosure required by the FCRA when obtaining consumer reports for employment purposes. The FCRA violations suffered by Plaintiff are thus typical of those suffered by other Class members, and Defendant treated Plaintiff consistent with other Class members in accordance with their standard policies and practices.

27. **Common Question of Law and Fact**: There are predominant common questions of law and fact and a community of interest amongst Plaintiff and the claims of the Class. The common questions include, but are not limited to:

(a) Whether Defendant procured consumer reports on prospective and existing employees;

(b) Whether Defendant violated the FCRA by procuring such consumer reports without a disclosure that was FCRA compliant;

(c) Whether Defendant's violations of the FCRA were willful;

(d) The proper measure of statutory damages; and

(e) The proper measure of punitive damages.

28. The nature of this action and the format of laws available to Plaintiff and members of the Class identified herein make the class action format a particularly efficient and appropriate procedure to redress the wrongs alleged herein. If each employee were required to file an individual lawsuit, the corporate Defendants would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual plaintiff with their vastly superior financial and legal resources. Requiring each Class member to pursue and individual remedy would also discourage the assertion of lawful claims by employees who would be disinclined to file an action

PLAINTIFF'S CLASS ACTION AND INDIVIDUAL COMPLAINT FOR DAMAGES

1  against their former and/or current employer for real and justifiable fear of retaliation and permanent
2  damage to their careers at subsequent employment.

3      29.    The prosecution of separate actions by the individual class members, even if possible, would create a substantial risk of (a) inconsistent or varying adjudications with respect to individual Class members against Defendant and which would establish potentially incompatible standards of conduct for Defendant, and/or (b) adjudications with respect to individual Class members which would, as a practical matter, be dispositive of the interest of the other Class members not parties to the adjudications or which would substantially impair or impede the ability of the Class members to protect their interests.  Further, the claims of the individual members of the Class are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses.

    30.    Such a pattern, practice and uniform administration of corporate policy regarding illegal procurement of consumer reports described herein is unlawful and creates an entitlement to recovery by Plaintiff and the Class identified herein, in a civil action, for applicable damages, reasonable attorneys' fees, and costs of suit according to the mandate of U.S.C. § 1681n.

    31.    Proof of a common business practice or factual pattern, which the named Plaintiff experienced and is representative of, will establish the right of each of the members of the Plaintiff Class to recovery on the causes of action alleged herein.

## **INDIVIDUAL ALLEGATIONS**

    32.    On or about January 27, 2014, Plaintiff was hired by Defendant as a non-exempt "Cash Logistics Processor," based in Sacramento, California.  Plaintiff's responsibilities included driving Defendant's vehicles.  At the time of Plaintiff's termination, he was earning $13.17 per hour.

    33.    On or about August 18, 2015, Plaintiff was assigned to use a particular truck for his work route.  Plaintiff had previous issues with the truck being unsafe, including the truck leaking exhaust fumes into the cab of the truck, exposing Plaintiff to dangerous, toxic exhaust fumes.  Plaintiff complained to Defendant's managerial employees about the truck before August 18, 2015.  Nevertheless, when Plaintiff protested to management about using the truck on August 18, 2015, management still forced Plaintiff to use the truck for his route.  Plaintiff then informed management

that if the truck was still leaking fumes into the cab, Plaintiff would return the truck and leave his shift early. While on his route, Plaintiff noticed that the fumes were still penetrating the cab of the truck, causing Plaintiff to become lightheaded. As a result, Plaintiff called his supervisor and informed him that he could no longer work in such unhealthy and dangerous conditions, and that he was returning the truck back to the facility. Defendant then terminated Plaintiff's employment on or about August 28, 2015, for refusing to finish his truck route using the dangerous truck.

34. As an actual and proximate result of the illegal employment actions of Defendant, Plaintiff has suffered and continues to suffer pain, humiliation, severe emotional distress, trauma, and sleeplessness. Also, as an actual and proximate result of Defendant's illegal employment actions, Plaintiff has suffered lost wages, including without limitation, unpaid overtime, incentivized compensation, and bonuses. Plaintiff also has suffered a loss in earning capacity. Thus, Plaintiff has suffered economic and non-economic losses in an amount greater than this Court's jurisdictional minimum of $25,000. Plaintiff seeks lost wages and loss in earning capacity, as well as compensatory damages for pain and suffering, inconvenience, and mental anguish. Plaintiff also seeks punitive damages, interest, attorneys' fees, and costs, as permitted by law.

## FIRST CAUSE OF ACTION

## FAILURE TO MAKE PROPER DISCLOSURE IN VIOLATION OF THE FCRA

## (15 U.S.C. §§ 1681b(b)(2)(A))

### (AGAINST DEFENDANT AND DOES 1-50 BY PLAINTIFF AND THE CLASS)

35. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 34 as though fully set for herein.

36. Defendant procured "consumer reports," as defined by the FCRA, on the Plaintiff and Class members for employment purposes. These reports were procured without first providing Plaintiff or Class members a clear and conspicuous disclosure made in writing, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes.

37. Neither "Background Investigation and Reference Authorization" nor "Applicant Statement" sections in Defendant's employment application satisfy the requirements of 15 U.S.C. §

1  1681b(b)(2)(A)(i) because: (1) both sections come as part of the employment application; (2) both
2  sections include a liability release; and (3) both sections contain other extraneous statements and
3  information.
4       38.    The foregoing violations were willful.  Defendant acted in deliberate or reckless
5  disregard of their obligations and the rights of Plaintiff and other Class members under 15 U.S.C. §
6  1681b(b)(2)(A)(i).  Defendant's willful conduct is reflected by, *inter alia,* the following:
7       (a)    Defendant is a large corporation with access to legal advice;
8       (b)    Defendant's conduct was inconsistent with the plain language of the statute, as well
9              as FTC's longstanding regulatory guidance and judicial interpretation pre-dating
10             Defendant's conduct;
11      (c)    Plaintiffs are informed and believe that pursuant to 15 U.S.C. § 1681b(b)(1),
12             Defendant certified to consumer reporting agencies such as HireRight that they
13             would comply with the disclosure requirements of the FCRA, but then did not; and
14      (d)    Defendant's inclusion of a release of claims clearly implies awareness by Defendant
15             that they could be held liable for improperly procuring a consumer report;
16      39.    Plaintiff and the Class are entitled to statutory damages of not less than $100 and not
17  more than $1,000 for each and every one of these violations, pursuant to 15 18 U.S.C. § 1681n(a)(l)(A).
18      40.    Plaintiff and the Class are entitled to such amount of punitive damages as the court may
19  allow pursuant to 15 U.S.C. § 1681n(a)(2).
20      41.    Plaintiff and the Class are further entitled to recover their costs and attorneys' fees,
21  pursuant to 15 U.S.C. § 1681n(a)(3).

## SECOND CAUSE OF ACTION

## RETALIATION IN VIOLATION OF LABOR CODE § 6310

### (AGAINST DEFENDANT AND DOES 1-50 BY PLAINTIFF INDIVIDUALLY)

25      42.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 41 as though fully
26  set for herein.
27      43.    On or about August 18, 2015, Plaintiff was assigned to use a particular truck for his work

1  route. Plaintiff had previous issues with the truck being unsafe, including the truck leaking exhaust
2  fumes into the cab of the truck, exposing Plaintiff to dangerous, toxic exhaust fumes. Plaintiff
3  complained to Defendant's managerial employees about the truck before August 18, 2015.
4  Nevertheless, when Plaintiff protested to management about using the truck on August 18, 2015,
5  management still forced Plaintiff to use the truck for his route. Plaintiff then informed management
6  that if the truck was still leaking fumes into the cab, Plaintiff would return the truck and leave his shift
7  early. While on his route, Plaintiff noticed that the fumes were still penetrating the cab of the truck,
8  causing Plaintiff to become lightheaded. As a result, Plaintiff called his supervisor and informed him
9  that he could no longer work in such unhealthy and dangerous conditions, and that he was returning the
10 truck back to the facility. Defendant then terminated Plaintiff's employment on or about August 28,
11 2015, for refusing to finish his truck route using the dangerous truck.

12      44.   Labor Code § 6310(b) prohibits, among other unlawful acts, discharging and/or
13 suspending an employee because that employee has made a bona fide oral or written complaint to his or
14 her employer of unsafe working conditions or work practices. Here, Defendant violated Labor Code §
15 6310(b) by retaliating against Plaintiff and ultimately terminating his employment in direct response to
16 his complaints of unsafe working conditions.

17      45.   Pursuant to Labor Code § 6310(b), Plaintiff seeks all applicable remedies, including
18 without limitation, reinstatement and reimbursement for lost wages and work benefits

### THIRD CAUSE OF ACTION

### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

### (AGAINST DEFENDANT AND DOES 1-50 BY PLAINTIFF INDIVIDUALLY)

22      46.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 45 as though fully
23 set for herein.

24      47.   At all times mentioned herein, the public policy of the State of California, as codified,
25 expressed and mandated in Labor Code § 6310, prohibit retaliation against an employee who has made
26 a bona fide complaint about health and/or safety issues at the workplace. Nevertheless, Defendant
27 violated these public policies by terminating Plaintiff on or about August 28, 2015, because of his

complaints regarding unsafe working conditions.

48. As a proximate result of Defendant's wrongful termination of Plaintiff, he has suffered and continues to suffer compensatory damages, including without limitation, severe emotional distress, lost wages, benefits, and compensation, and loss of future earnings and earning capacity in the amount of at least $25,000.00, according to proof at the time of trial, which is in excess of the jurisdictional minimum for this lawsuit to qualify as an unlimited civil action.  Plaintiff claims such amounts as damages, together with prejudgment interest accruing from the date of the filing of this action pursuant to California Civil Code Sections 3281 and/or 3288, and/or any other provision of law providing for prejudgment interest.

49. Further, because the wrongful acts against Plaintiff were carried out, authorized, or ratified by Defendant's directors, officers, and/or managing agents, acting with malice, oppression, or fraud, or were deliberate, willful, and in conscious disregard of the probability of causing injury to Plaintiff, he seeks punitive damages to deter Defendant from committing said illegal acts in the future.

## FOURTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## (AGAINST DEFENDANT AND DOES 1-50 BY PLAINTIFF INDIVIDUALLY)

50. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 49 as though fully set for herein.

51. When Defendants, and the each of them, committed the acts described above, they did so deliberately and intentionally to cause Plaintiff to suffer humiliation, mental anguish, and emotional distress.  The outrageousness of the above-described conduct is amplified due to upper management's abuse of their positions with actual and apparent authority over Plaintiff, such as is commonly found in employment relationships.  The Defendants, and each of them, were aware of their unlawful acts would cause Plaintiff to suffer extreme emotional distress and other consequential damages.

52. The above-said acts of the Defendants, and each of them, constituted intentional infliction of emotional distress against Plaintiff and such conduct of the Defendants was a substantial or determining factor in causing damage and injury to Plaintiff.

53. As a result of Defendants' intentional infliction of emotional distress, Plaintiff has suffered and continues to suffer substantial loss and damages including, loss of salary, future advancement, bonuses, benefits, embarrassment, humiliation, and mental anguish in an amount to be determined at trial.

54. Defendants, and each of them, committed said intentional infliction of emotional distress alleged herein against Plaintiff, maliciously, fraudulently, and oppressively with the wrongful intent of injuring Plaintiff for an improper and evil motive which constitutes a malicious and conscious disregard of Plaintiff's rights. Plaintiff is thereby entitled to punitive damages from the Defendants in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment to be entered in his favor and against Defendants, and each of them, as follows:

1. For an order appointing Plaintiff as the representative of the classes as described herein;
2. For an order appointing Counsel for Plaintiff as class counsel;
3. Upon the First Cause of Action, for damages and/or penalties pursuant to statute as set forth in the FCRA;
1. Upon the Second Cause of Action, for all applicable damages and remedies, including without limitation, lost wages and work benefits;
2. Upon the Third Cause of Action, for all special and general damages, according to proof;
3. Upon the Fourth Cause of Action, for special and general damages for emotional distress and mental anguish in a sum according to proof;
4. Upon the Third and Fourth Causes of Action, for exemplary and punitive damages in a sum appropriate to punish Defendants and set an example for others;
5. Prejudgment interest at the prevailing legal rate;
6. Attorneys' fees pursuant to statute, including without limitation, 15 U.S.C. § 1681n(a)(3);
7. Costs of suit; and

/ / /

1      8.    Such other and further relief as the Court may deem proper.

3  DATED: December 30, 2015        BROSLAVSKY & WEINMAN, LLP

5                                          By: *ZBroslavsky*
                                        Zack Broslavsky
                                        Attorneys for Plaintiff and the Class

PLAINTIFF'S CLASS ACTION AND INDIVIDUAL COMPLAINT FOR DAMAGES

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED: December 30, 2015

BROSLAVSKY & WEINMAN, LLP

By: *ZBroslavsky*
Zack Broslavsky
Attorneys for Plaintiff and the Class